UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AUGUSTUS ALEXANDER f/k/a AUGUSTUS MARSHALL, Plaintiff, | ) | |
| v. | ) | No. 1:24-cv-00906-JRO-TAB |
| ARAMARK Company, Food Services, et al., Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Augustus Alexander is a former IDOC prisoner, but the events that gave rise to his complaint occurred when he was incarcerated at New Castle Correctional Facility ("New Castle"). Alexander brought this lawsuit against Geo Group, Inc., and Aramark alleging that they failed to implement safe food practices within New Castle. Dkt. 1.

Upon screening Alexander's complaint, the Court allowed him to proceed with *Monell* claims against both Geo Group and Aramark alleging that on three occasions, May 23, May 25, and June 4, all of 2022, he was given food sacks that contained some type of insect in his cereal or oatmeal, and that the defendants "failed to maintain or implement safe food practices" within the New Castle. Dkt. 29 at 4. Geo Group and Aramark have moved for summary judgment alleging that Alexander has failed to introduce any evidence related to a policy or practice that would implicate them. Dkts. 57, 65. For the reasons that follow, the Geo Group's motion for summary judgment, dkt. [57], is **granted,** and

Aramark's motion for summary judgment, dkt. [65], is **granted**. Final judgment shall be entered.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court has only to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion

can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all times relevant to the complaint, Alexander was an inmate at New Castle. Dkt. 59-1 at 6.

Aramark provides food service at New Castle pursuant to a contract between Aramark and IDOC. Dkt. 66-1 at 1. The meals served under the contract are approved by the IDOC and were also reviewed and approved by Aramark's registered dietician. *Id.* at 2. The meals meet the nutritional guidelines of the American Correctional Association and provide for adequate levels of protein, Vitamin A, Vitamin C, calcium, and iron. *Id.* Compliance with the food items on the Master Menu is mandated by the Contract. *Id.* In this regard, the meals provided to inmates at New Castle constitute a nutritionally adequate diet that is prepared and served under conditions which do not present a danger to the health and well-being of the inmates who consume it. *Id.* The IDOC conducts quarterly inspections to ensure compliance with the Master Menu. *Id.* At all relevant times, the meals served were consistent with the Master Menu. *Id.*

The quarterly inspections conducted by IDOC also addressed food quality and potential contamination issues, such as food being contaminated with insects or rodents. During the times relevant to the allegations at issue in this lawsuit, Aramark passed those quarterly inspections. *Id.* at 2–3. Aramark does not have a policy or practice of serving contaminated food to inmates. *Id.* at 3.

If any inmate has a problem with a tray, Aramark provides replacement trays and meals. *Id.* These meals are available to inmates if they believe their tray is inadequate or contaminated in some way. *Id.* The inmate must report the issue with his tray to the correctional officer in his housing unit. *Id.* If the correctional officer agrees the tray is insufficient in some way, they can replace the tray. *Id.* Aramark did not create the tray replacement policy, nor does it have any control over the tray replacement policy. *Id.* If an inmate reports an allegedly insufficient tray to a correctional officer, but the correctional officer does not report it to the kitchen, then Aramark is unable to correct any potential issues at that time. *Id.*

**B. Incidents Relevant to the Complaint**

On May 23, 2022, Alexander testified that he received a breakfast sack which consisted of cereal, a milk packet, two slices of bread, and, perhaps, a peanut butter packet. Dkt. 59-1 at 30. Two insects were in the cereal. *Id.* at 11. Alexander was issued a second food sack to replace the first one, and he stated that the cereal in that food sack also had an insect. *Id.* at 13. After this incident, he didn't eat for days, lost his appetite, and lost weight. *Id.*

On May 25, 2022, he received oatmeal that had unknown "black stuff" inside of it. *Id.* at 14-15. Alexander stated further that he received a milk packet and two slices of bread with his oatmeal that day. *Id.* at 31. He did not consume the bread or milk and did not state that there was anything wrong with these items. *Id.* On June 4, 2022, he received cereal that again contained insects. *Id.* at 16. He received a milk packet and two slices of bread, and perhaps a peanut butter packet, with his cereal that day. *Id.* at 32. He did not consume the bread or milk and did not state that there was anything wrong with the bread. *Id.* Alexander requested that guards take pictures of his contaminated meals, but he stated that he did not see anyone ever take a picture of his food or write a report about his food. *Id.* at 44.

Alexander testified that he knew Aramark to be the food service provider at New Castle but that he also believed that Geo Group was responsible for the food. *Id.* at 33. Alexander filed grievances related to the three incidents. Dkts. 59-4, 59-5, 59-6. Shane Nelson, a Geo Group employee, responded to all three grievances by including information about his claim, what action was taken in response, and what to do in the future should something like this occur again. Dkt. 59-1 at 19-22, 37.

## III. DISCUSSION

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d

1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

First, the Court finds that Alexander has not sufficiently proved that he was subjected to a serious deprivation actionable under Section 1983. Generally, "[o]ccasional instances of food or water contamination in prison will not support a claim of deliberate indifference to conditions of confinement under the Eighth Amendment." *Olrich v. Kenosha Cty.*, No. 18-cv-1980-pp, 2020 WL 1169959, at *3 (E.D. Wisc. Mar. 11, 2020) (citing *McRoy v. Aramark Corr. Servs., Inc.*, 268 F. App'x 479 (7th Cir. 2008) (no deliberate indifference where inmate was served undercooked chicken on one occasion, sour milk on six occasions, and spoiled sandwich meat on three occasions, where inmate was offered replacement items when available, and no further incidents occurred); *Accord Franklin v. True*, 76 F.3d 381 (7th Cir. 1996) (concluding that one instance of food poisoning was insufficient to state conditions-of-confinement claim); *Hadley v. Dobucki*, 59 F.3d

173, 1995 WL 364225 (7th Cir. 1995) (occasional "foreign objects" such as aluminum foil in prison food did not state an Eighth Amendment claim)). Viewing the facts in the light most favorable to Alexander, he was subjected to foreign objects in his food on three occasions. This is, at most, negligence and does not rise to the level of an Eighth Amendment violation.

Second, even if these incidents were actionable under Section 1983, Alexander has not designated any evidence to support his claims that a widespread policy or practice by Geo Group or Aramark led to his constitutional violations. Rather, he has alleged three isolated incidents and provided an affidavit from another inmate, M.A. Shrock, attached to his complaint that also states Shrock experienced contaminants in his food "multiple occasions." Dkt. 27-1 at 22. Shrock does not provide any dates for the alleged incidents. "[A]n inmate cannot show a widespread practice of an unconstitutional nature, such as a custom of ignoring prison policy, by pointing to isolated incidents . . . ." *Sinn v. Lemmon*, 911 F. 3d 412, 423 (citing *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003)) (internal quotations omitted). Rather, pre-existing knowledge of global policy nonconformity is demonstrated only with "evidence of a series of bad acts" that the defendant "was bound to have noticed, like a pervasive pattern of [violations]…" *Id.* (quoting *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)) (internal quotations omitted).

By contrast, the defendants have designated evidence that they had numerous policies regarding food safety and compliance. Further, although Alexander has alleged conclusory language about policies and practices at Geo

Group and Aramark related to the food program, he has provided no evidence to support his claims. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up). No reasonable juror could find that Geo Group or Aramark had a policy or practice of failing to implement safe food practices. Summary judgment must be granted in their favor.

## IV. CONCLUSION

Geo Group's motion for summary judgment, dkt. [57], is **GRANTED**. Aramark's motion for summary judgment, dkt. [65], is **GRANTED**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/2/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

AUGUSTUS ALEXANDER
6311 Southcrest Road
Fort Wayne, IN 46816

All Electronically Registered Counsel